

Receipt Number

_545492·

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAIDA BENHAJLA, Ph.D. and
HALIM BENHAJLA, individually, and as
shareholders and directors of Soft-Light, Inc.,

          Plaintiffs,

v

SOFT-LIGHT, INC., a Michigan corporation
(a/k/a HARLEQUIN), and RONALD C. WIAND,
individually and in his official capacity as officer,
director and shareholder of Soft-Light, Inc.,
RONALD HOFER, individually and in his official
capacity as director and shareholder of Soft-Light, Inc.,
and DENNIS RAFAELLI, in his individual capacity
and official capacities as shareholder of Soft-Light, Inc.,
Jointly and Severally,

          Defendants.

Case: 2:06-cv-13333
Assigned To: Cox, Sean F
Referral Judge: Capel, Wallace
Filed: 07-24-2006 At 01:52 PM
CMP BENHAJLA V SOFT LIGHT (AWT)

---

CHAPMAN AND ASSOCIATES, P.C.
Ronald W. Chapman  (P37603)
Brian J. Richtarcik  (P49390)
Attorneys for Plaintiffs Saida Benhajla, Ph.D.
and Halim Benhajla
40950 N. Woodward Avenue, Suite 120
Bloomfield Hills, MI 48304
248-644-6326

---

## VERIFIED COMPLAINT

NOW COME the Plaintiffs, SAIDA BENHAJLA, Ph.D. and HALIM BENHAJLA, by and

through their attorneys, Chapman And Associates, P.C., and for their Verified Complaint state as

follows:

### PARTIES

1.    Plaintiff, SAIDA BENHAJLA, Ph.D., is a citizen of the Country of Tunisia.  She is a

resident alien, currently residing in Beverly Hills, Michigan. During all dates in question, she was the CEO, President, and Secretary of Defendant, SOFT-LIGHT, INC., and a member of the Board of Directors. She is a minority shareholder, holding 25% of the outstanding shares of SOFT-LIGHT, INC.

2.    Plaintiff, HALIM BENHAJLA, is a citizen of the Country of Canada, where he also resides. During all dates in question, he was the Treasurer and a member of the Board of Directors of SOFT-LIGHT, INC. He is a minority shareholder holding 4% of the outstanding shares of SOFT-LIGHT, INC.

3.    Defendant, SOFT-LIGHT, INC. (a/k/a HARLEQUIN), is a Michigan corporation in good standing. Their principal place of business and registered office is located at 900 Wilshire Drive, Suite 202, Troy, Michigan 48084.

4.    Upon information and belief, Defendant, RONALD C. WIAND, is a citizen of the United States of America, and a resident of Michigan. During all dates in question, he was an Officer and Director of SOFT-LIGHT, INC. He is a shareholder holding 47% of the outstanding shares of SOFT-LIGHT, INC. He is being sued in his individual and official capacities.

5.    Defendant, RONALD HOFER, upon information and belief, is a citizen of the United States and resides in North Carolina. He is a 10% shareholder of SOFT-LIGHT, INC., and a member of the Board of Directors. He is being sued in his individual and official capacities.

6.    Defendant, DENNIS RAFAELLI, upon information and belief, is a citizen of the United States and resides in Michigan. He is a 10% shareholder of SOFT-LIGHT, INC. He is being sued in his individual and official capacities.

## JURISDICTION

7.  The amount in controversy exceeds $75,000, therefore, jurisdictional limits pursuant to 28 U.S.C. 1332 are established.

8.  This action is between citizens of a state and citizens or subjects of a foreign state, therefore, this Court has Diversity Jurisdiction over the present matter pursuant to 28 U.S.C. 1332 (a)(2).

## FACTS

9.  Defendant, SOFT-LIGHT, INC., was incorporated in Michigan on November 7, 2002.

10. Defendant, RONALD C. WIAND, was the original incorporator.  He is the Registered Agent of the company.

11. SOFT-LIGHT, INC.'s primary business concerns the development of a cast ophthalmic photochromic lens and a process for making such a lens, frames and goggles.[1] RONALD C. WIAND assigned his rights to this technology to SOFT-LIGHT, INC.  (See Exhibit K).

12. SOFT-LIGHT, INC. owns patent applications concerning certain photochromic technologies at issue in the case, including but not limited to, U.S. Patent Applications in Docket No.'s: P4222, P4223, P4224, P4225, P4226, P4227, P4184 (Exhibit K), and P4220PCT (PCT/US2006/006141 filed on March 21, 2006), 4225PCT (PCT/US2006/0044045 filed on February 7, 2006), and 4227PCT (PCT/US2006/004294 filed on February 7, 2006) (See Exhibit D), and other subsequently filed applications.

---

[1] Photochromic lenses are designed to adjust their color/darkness as a function of UV light (examples are the transitions lenses which are current market leaders).  Soft-Light Inc. developed competing photochromic technology to transitions and expanded it to also include frames/sunglasses/goggles."

13.    RONALD C. WIAND entered into a relationship with a lens developer/manufacturer in Wanxin, China to use its facilities for the purpose of developing SOFT-LIGHT, INC.'s cast ophthalmic photochromic lens technology and manufacturing process.

14.    Upon information and belief, over time RONALD C. WIAND improperly disclosed confidential and privileged information to the lens developer/manufacturer in Wanxin, China and/or other persons concerning SOFT-LIGHT, INC.'s cast ophthalmic photochromic lens and related photochromic manufacturing process.

15.    On December 2, 2002, all of the shareholders of SOFT-LIGHT, INC. adopted the By-Laws of the company, set forth in Exhibit A hereto.

16.    On December 2, 2002, the shareholders of SOFT-LIGHT, INC. were SAIDA BENHAJLA, Ph.D., HALIM BENHAJLA, RONALD C. WIAND, RON HOFER, and DENNIS RAFFAELLI. These persons, with the exception of Mr. Raffaelli, are also the members of the Board of Directors.

17.    On January 1, 2003, SAIDA BENHAJLA, Ph.D. signed an Employment Agreement ("Employment Agreement") with SOFT-LIGHT, INC. A copy of the Agreement is attached hereto as Exhibit B.

18.    The Employment Agreement requires SOFT-LIGHT, INC. to make SAIDA BENHAJLA, Ph.D. its President and CEO.

19.    Pursuant to the Employment Agreement, SOFT-LIGHT, INC. promised SAIDA BENHAJLA, Ph.D. compensation, including but not limited to the following:

    a.    $170,000 per year plus 20% of profits;

    b.    20% of the authorized shares of SOFT-LIGHT, INC.;

c.    a seat on the Board of Directors; and

d.    up to an additional 8% of equity.

20.    Pursuant to the Employment Agreement, SOFT-LIGHT, INC. may terminate SAIDA

BENHAJLA's employment "with cause" only.

21.    Specifically, the Employment Agreement defines termination "with cause" as follows:

> Soft-Light shall only have cause to terminate her employment if she
> is convicted of unlawful misconduct involving fraud which adversely
> affects Soft-Light or if she is found to be guilty of gross negligence,
> subordination or incompetence or of consistently not performing her
> job description/duties in a way that materially adversely affects Soft-
> Light. Gross negligence shall be defined as the intentional failure to
> perform a manifest duty in reckless disregard of the consequences
> affecting Soft-Light. Incompetence shall be defined as the lack of
> ability, legal qualification or fitness to discharge the duties that fall
> under her responsibility.

22.    On March 20, 2006, SAIDA BENHAJLA, Ph.D. and RONALD C. WIAND signed a

document entitled "Mutual Conditions of Satisfaction for Bailout." (Bailout Agreement)

(Exhibit C).

23.    The Bailout Agreement gives SAIDA BENHAJLA, Ph.D. 5% of additional treasury stock.

24.    Pursuant to the Bailout Agreement, on March 20, 2006, RONALD C. WIAND assumed,

"full financial authority of company until we are on firm footing..."

25.    On May 1, 2006, SAIDA BENHAJLA, Ph.D., as President and CEO of SOFT-LIGHT, INC.,

signed an Option Agreement with Insight Equity A.P.X., LP (d/b/a Vision-Ease Lens).

(Exhibit D).

26.    Pursuant to the Option Agreement, Vision-Ease Lens paid SOFT-LIGHT, INC. Thirty

Thousand Dollars ($30,000) per month in return for the right to co-develop the "cast-

ophthalmic photochromic lens according to the technology disclosed in the Patent Rights."

27.     Pursuant to the Option Agreement, Vision-Ease Lens acquired a right of first refusal to license the Patent Rights from SOFT-LIGHT, INC. as set forth therein.

28.     Upon information and belief, RONALD C. WIAND is in the process of unlawfully transferring development, manufacturing, and marketing of SOFT-LIGHT, INC.'s technologies outside of the United States to some other location, including but not limited to, Wanxin, China, to avoid SOFT-LIGHT, INC.'s legal and equitable obligations to its employees, shareholders, investors, creditors, and/or Vision-Ease Lens.

29.     During early June, 2006, RONALD C. WIAND mailed a letter to all shareholders alleging to be "very concerned about the long-term viability" of SOFT-LIGHT, INC. As Chairman of the Board, Mr. Wiand's letter requests in part, without explanation, that Plaintiff "take an indefinite and voluntary leave." (Exhibit E).

30.     Mr. Wiand's letter states that if the proposed "requests" therein do not meet with the shareholders' approval by June 15, 2006, he "will call a shareholder's meeting for June 23 [2006] and we will determine at that time how to protect the best interest of SOFT-LIGHT, INC. and its shareholders." (Exhibit E).

31.     On June 16, 2006, RONALD C. WIAND mailed a document entitled "Notice of Special Meeting of the Shareholders of Soft-Light, Inc." to the shareholders in **violation** of the By-Laws, Article II, Sections 2 and 4. (Exhibit F). This document does not constitute proper notice pursuant to the By-Laws.

32.     The special shareholders meeting was scheduled for June 29, 2006, at 1:00 p.m. (Exhibit F).

33.     The purpose of the alleged special shareholders meeting was for Mr. Wiand to wrestle

complete control of SOFT-LIGHT, INC. to the detriment of the remaining shareholders by removing the existing Board of Directors, and electing a new Board of Directors stacked with Mr. Wiand's friends, and to replace the corporation's CPA with a friend as well.

34. On June 20, 2006, Plaintiff received Defendant's "Notice of Special Meeting of the Shareholders of Soft-Light, Inc."

35. On June 26, 2006, Plaintiff mailed a letter to Mr. Wiand in response to his notice, and copied same to all shareholders of record. (Exhibit G).

36. The June 26, 2006 letter notifies Mr. Wiand that his purported Notice For A Special Shareholders Meeting is in violation of the By-Laws, and that any request for a Special Shareholders Meeting must be made to Plaintiff as President and Secretary. Plaintiff properly notified all shareholders that the Special Shareholders Meeting scheduled for June 29, 2006 at 1:00 p.m. would not go forward. (Exhibit G).

37. Also on June 26, 2006, Plaintiff mailed a Notice of Special Meeting of Board of Directors to each member of the Board of Directors, complying with Article III of the By-Laws. (Exhibit H).

38. The purpose of the Special Meeting of the Board of Directors was generally to examine Mr. Wiand's relationship with Wanxin, China concerning the development of SOFT-LIGHT, INC.'s technology, request a complete accounting concerning same, and adopt a resolution to ensure compliance with the Option Agreement and compliance with Mr. Wiand's fiduciary duties as an Officer and Director of SOFT-LIGHT, INC. The specific purpose of the meeting is set forth in the letter. (Exhibit H).

39. The Special Meeting of the Board of Directors was scheduled to occur on June 29, 2006 at

2:00 p.m.

40.  On June 29, 2006 at 1:00 p.m., Mr. Wiand unlawfully proceeded with the Special Meeting of Shareholders, over the objection of Plaintiffs.

41.  RONALD C. WIAND, RONALD HOFER, and DENNIS RAFAELLI, who together hold a majority of outstanding shares in SOFT-LIGHT, INC., unlawfully voted to replace the existing Board of Directors, and reduce the number of Directors on the Board from four to three. (Exhibit I). This action purports to remove SAIDA BENHAJLA, Ph.D. and HALIM BENHAJLA as Directors. Defendants' actions removed any potential for a stalemate between the Board of Directors, and DENNIS RAFAELLI was elected to bring the total Directors up to three. All this was done to put RONALD C. WIAND in complete control and facilitate Defendants' intent to move the corporate technology to China, out of the reach of minority shareholders.

42.  Subsequently, the new illegal Board of Directors voted to remove SAIDA BENHAJLA, Ph.D. from office as CEO, President, and Secretary, and to remove HALIM BENHAJLA from office as Treasurer. (Exhibit J).

43.  The new Board of Directors unlawfully voted in RONALD C. WIAND to replace Plaintiff as CEO and President, and a friend of Mr. Wiand as the new Treasurer of SOFT-LIGHT, INC. (Exhibit J).

44.  The new Board of Directors also unlawfully suspended all payments to Plaintiffs. (Exhibit J).

45.  Upon information and belief, Defendants also fired the corporation's accountant, and replaced same with a bookkeeper who is a personal friend of RONALD C. WIAND.

46.    Each act of Defendants, RONALD C. WIAND, RONALD HOFER, and DENNIS RAFAELLI on June 28 and/or 29, 2006, was for the sole purpose to further RONALD C. WIAND's scheme to unlawfully misappropriate the corporation's technologies and financial assets to the exclusion of Plaintiffs.

47.    On June 29, 2006 at 2:00 p.m., the Special Meeting of the original Board of Directors was held as noticed by SAIDA BENHAJLA, Ph.D., President, CEO, and Director. All members were present, with the exception of Mr. Wiand who was aware of the meeting but chose not to attend. A valid quorum was obtained.

48.    The Board of Directors voted in favor of the resolutions proposed in the SAIDA BENHAJLA's Notice of Special Meeting of Board of Directors.  RONALD HOFER abstained from voting.  (Exhibit L).

49.    Defendants' actions caused Plaintiffs, and will continue to cause in the future, lost compensation, lost investment, lost wages, lost profits, and other monetary damages pursuant to the Employment Agreement, which exceed $75,000.

50.    Plaintiffs require injunctive relief by the Court to enjoin Defendants from unlawfully misappropriating assets of the corporation for their own private gain, and to enjoin Defendants from moving the corporate operations and/or transferring their trade secrets offshore to China or elsewhere which would destroy the value of the corporation and Plaintiffs' interests therein.

51.    If Defendants' actions are not enjoined and SOFT-LIGHT, INC.'s operations and technology are moved outside of the United States, Plaintiffs will be irreparably harmed because there will be no value left in SOFT-LIGHT, INC., and no reasonable manner in which Plaintiffs

would be able to enforce or collect any judgment awarded Plaintiffs for monetary damages. Defendants would be outside the reach of the jurisdiction of this court or any court in the United States, rendering collection impossible.

## COUNT I
## BREACH OF FIDUCIARY DUTY/MISAPPROPRIATION OF CORPORATE ASSETS AND TRADE SECRETS

52.   Plaintiffs rely on the allegations in paragraphs 1 thru 51 as if specifically restated herein.

53.   As an Officer and Director of SOFT-LIGHT, INC., RONALD C. WIAND owes Plaintiffs and all shareholders of SOFT-LIGHT, INC. a fiduciary duty not to engage in *ultra vires* acts, and at all times to act in the best interests of the shareholders of SOFT-LIGHT, INC.

54.   As an Officer and Director of the corporation, Defendant, RONALD C. WIAND, is bound to act in good faith for the benefit of the corporation only and not for personal self interest.

55.   As an Officer and Director of the corporation, Defendant, RONALD C. WIAND, owes a fiduciary duty not to misappropriate the corporate assets for purposes not approved by the shareholders and/or Board of Directors, and/or for purposes that are not in the best interest of the corporation.

56.   Defendant, RONALD C. WIAND, has not discharged his duties as required by MCL 450.1541a(1), since his actions are not in the best interests of the corporation and its shareholders, and he is acting for personal gain and motives only.

57.   RONALD C. WIAND further breached his fiduciary duty by misappropriating corporate assets, including but not limited to, misappropriating the corporation's confidential information and trade secrets to Wanxin, China or elsewhere.

58.   The actions of the Defendants in control of the corporation as set forth in this Complaint are

illegal, fraudulent, dishonest, willfully unfair and oppressive to the corporation, the Plaintiffs, and/or the shareholders, and constitutes a gross abuse of authority and/or discretion.

59.   Defendants breached their aforementioned fiduciary duties to the Plaintiffs and shareholders of SOFT-LIGHT, INC., and continue to do so presently, by engaging in unlawful conduct, including but not limited to, the following:

a.   By conducting an unlawful shareholders meeting on June 28 and/or 29, 2006 in violation of the By-Laws (See Exhibit I);

b.   By unlawfully firing the Board of Directors on June 28 and/or 29, 2006 and passing a resolution concerning same (See Exhibit I);

c.   By voting in new members of the Board of Directors on June 28 and/or 29, 2006 to replace those members who were fired, and passing a resolution concerning same (See Exhibit I);

d.   By unlawfully firing SAIDA BENHAJLA, Ph.D. from the Board of Directors without cause in violation of her Employment Agreement (See Exhibit I);

e.   By conducting an unlawful Special Meeting of the new Board of Directors and subsequently passing resolutions, including but not limited to, a resolution firing SAIDA BENHAJLA, Ph.D. from the office of President of SOFT-LIGHT, INC., and firing HALIM BENHAJLA (See Exhibit J);

f.   By firing SAIDA BENHAJLA, Ph.D. from the office of President of SOFT-LIGHT, INC. without cause in violation of her Employment Agreement (See Exhibits B and J); and

g.   By alienating and misappropriating certain confidential information, trade secrets,

and/or intellectual property from SOFT-LIGHT, INC. and disclosing and/or conveying same to third parties as set forth in this Complaint, including but not limited to, technology concerned in the following U.S. Patents owned by SOFT-LIGHT, INC.:  U.S. Patent Docket No.'s: P4222, P4223, P4224, P4225, P4226, P4227, P4184 (Exhibit K), and P4220PCT (PCT/US2006/006141 filed on March 21, 2006), 4225PCT (PCT/US2006/0044045 filed on February 7, 2006), and 4227PCT (PCT/US2006/004294 filed on February 7, 2006) (See Exhibit D).

60.   **MCL 445.1903 specifically authorizes this Court to grant injunctive relief to prevent threatened or actual misappropriation of trade secrets and confidential information.**

61.   Defendants' actions to alienate and misappropriate SOFT-LIGHT, INC.'s patented technologies outside of the United States and each of the shareholders, will result in irreparable injury to the corporate interests as set forth in the Statement of Facts, and otherwise herein, unless the court intervenes and restrains Defendants' actions.

62.   Plaintiffs have been injured as a result of Defendants' breach of fiduciary duty in the following manner:

    a.   Loss of past, present, and future salary, profits, and/or compensation;

    b.   Lost capital ownership in additional shares of capital stock of SOFT-LIGHT, INC.;

    c.   Lost employment opportunity; and

    d.   All other past, present, and future compensation SAIDA BENHAJLA, Ph.D. reasonably would have received if Defendants did not breach the Employment Agreement.

63.   Pursuant to State law, there exists sufficient grounds for the court to order the following

relief:

a.      Enter an order stating as a matter of law the June 28 or 29, 2006 shareholder meeting to be invalid and, therefore, all actions arising our of said meeting are likewise null and void.  MCL 450.1489(1)( c).  (See Exhibit J).

b.      An injunction prohibiting any resolution of the Board of Directors and/or shareholders of SOFT-LIGHT, INC. which seeks to remove Plaintiffs from the Board of Directors during the pendency of this litigation.  MCL 450.1489(1)( c).

c.      An injunction prohibiting any resolution of the Board of Directors and/or shareholders of SOFT-LIGHT, INC. from removing SAIDA BENHAJLA, Ph.D. as President and CEO.  MCL 450.1489(1)( c).

d.      An injunction prohibiting Defendants from moving any of the business operations of SOFT-LIGHT, INC. outside of the United States of America during the pendency of this lawsuit.  MCL 450.1489(1)(d)  MCL 600.3605(1)(h).

e.      An injunction prohibiting Defendants from disclosing, sharing, or otherwise alienating any confidential corporate information, trade secrets or property concerning and/or related to SOFT-LIGHT, INC.'s technologies contained in U.S. Patent Docket No.'s: P4222, P4223, P4224, P4225, P4226, P4227, P4184 (Exhibit K), and P4220PCT (PCT/US2006/006141 filed on March 21, 2006), 4225PCT (PCT/US2006/0044045 filed on February 7, 2006), and 4227PCT (PCT/US2006/004294 filed on February 7, 2006) (See Exhibit D) to any person or entity other than Vision-Ease Lens, pursuant to the terms and conditions of the Option Agreement (Exhibit D). MCL 450.1489(1)(d); MCL 600.3605(1)(h); MCL

445.1903.

f.      That Defendants shall cease all lens research and development, manufacturing and marketing activity, of any nature, in the Wanxin, China factory and all locations in China and/or any other foreign country or location not approved by Vision-Ease Lens (in writing) with respect to those processes and licenses addressed in the May 1, 2006 Option Agreement.  MCL 450.1489(1)(d).

g.      That Defendant, RONALD C. WIAND, shall serve an accounting on all shareholders to account for all resources used during the period of time he was allegedly engaged in research and development at the Wanxin, China factory, or any location in China, through present.   This accounting shall include all research and development materials, processes, disclosure of patented processes, materials, financial resources, all outstanding invoices, or other disclosures that may in any way have allowed for an opportunity for a third party to interfere with the patents owned by SOFT-LIGHT, INC., or gain an economic or competitive advantage over SOFT-LIGHT, INC. in any market, including the China market.  MCL 450.1489(1)(d);  MCL 600.3605(1)(a).

h.      That all research and development activity on the "lens" and tinting/photochromic process may be performed only by Vision-Ease Lens laboratories/suppliers approved in writing by Vision-Ease Lens.  MCL 450.1489(1)(d).

I.      To suspend RONALD C. WIAND from acting as an Officer or Director of SOFT-LIGHT, INC.  MCL 600.3605(1)( c) and/or (d) during this litigation.

j.      Remove RONALD C. WIAND from the Board of Directors of SOFT-LIGHT, INC. permanently, pursuant to MCL 450.1514.

k.      Award compensatory damages to Plaintiffs for injury to Plaintiffs as a result of Defendants' breach of fiduciary duty as set forth herein.   MCL 450.1489(1)(f).

**COUNT II**
**FRAUD/MISREPRESENTATION**

64.    Plaintiffs rely on the allegations in paragraphs 1 thru 63 as if more specifically restated herein.

65.    Plaintiffs invested substantial personal capital in SOFT-LIGHT, INC. in exchange for shares of capital stock in the corporation.

66.    Plaintiffs were induced into investing in the corporation by Defendants' promises that they would act in good faith pursuant to their fiduciary duties to the shareholders.

67.    Defendants, including but not limited to, RONALD C. WIAND, made material misrepresentations in order to induce Plaintiffs into investing in Defendants' corporation and becoming shareholders.

68.    RONALD C. WIAND's misrepresentations include, but are not limited to, the following: that he would discharge his duties as officer, director, and shareholder of the company in the company's best interests consistent with his fiduciary duty; that he would honor all employment agreements with Plaintiffs; that he would honor all shares in the company; and that he would honor all shareholders' agreements with the company.

69.    Defendants further made material misrepresentations in order to induce Plaintiffs to accept employment with SOFT-LIGHT, INC.  For example, Defendants stated the photochromic technology was ready for production and sale.

70.    Plaintiffs relied on Defendants' material misrepresentations.

71.   Rather than acting in the best interests of the shareholders and corporation, Defendants have embarked on a course of conduct which serves only the self-interests of RONALD C. WIAND and shareholders other than Plaintiffs, and Mr. Wiand's plan to alienate and misappropriate the corporation's property for his personal gain only, and/or the personal gain of all other shareholders except Plaintiffs.

72.   Plaintiffs have been damaged as a result of Defendants' fraud and misrepresentations, including but not limited to: lost wages, lost profits, lost capital investment in SOFT-LIGHT, INC., lost opportunity to obtain and accept other employment, and all other compensatory damages otherwise stated in this Complaint.

## COUNT III
## BREACH OF CONTRACT

73.   Plaintiffs rely on the allegations in paragraphs 1 thru 72 as if more specifically restated herein.

74.   At all times Plaintiff, SAIDA BENHAJLA, Ph.D., displayed the ability, legal qualification and fitness to discharge her duties pursuant to her Employment Agreement in Exhibit B.

75.   At all times Plaintiff faithfully and competently discharged her duties as required pursuant to her Employment Agreement.

76.   Defendants owe SAIDA BENHAJLA, Ph.D. a lawful duty to honor all terms and conditions of her Employment Agreement.

77.   Defendants breached, and continue to breach, their duties to SAIDA BENHAJLA, Ph.D. under the terms and conditions of Plaintiff's Employment Agreement, including but not limited to, in the following manner:

Page 16 of 26

a.   Defendants failed to pay compensation promised to SAIDA BENHAJLA, Ph.D. in the amount of $170,000 per year;

b.   Defendants removed SAIDA BENHAJLA, Ph.D. from the Board of Directors;

c.   Defendants terminated SAIDA BENHAJLA's employment as CEO and President without cause as defined in the Employment Agreement.

78.   Plaintiff is entitled to the benefit of her bargain set forth in the Employment Agreement.

79.   Defendants' breach of the terms and conditions of SAIDA BENHAJLA's Employment Agreement resulted in injury to Plaintiff, including but limited to:

a.   Lost past, present, and future salary, profits, and/or compensation;

b.   Lost capital ownership in additional shares of capital stock of SOFT-LIGHT, INC.;

c.   Lost employment opportunity; and

d.   All other past, present, and future compensation she reasonably would have received if Defendants did not breach the Employment Agreement.

80.   As a result of Defendants' breach of the Employment Agreement, SAIDA BENHAJLA, Ph.D. has incurred the following damages, or will incur them in the future;

a.   All past and present salary earned and owed to her by SOFT-LIGHT, INC., including but not limited to, approximately $595,000.

b.   All future salary she would have earned had she remained President of SOFT-LIGHT, INC. pursuant to the terms of the Employment Agreement.

c.   All additional shares of capital stock in SOFT-LIGHT, INC. that she would otherwise have received and/or reasonably expected had she remained President of SOFT-LIGHT, INC.

d.      All other past, present, and future compensation she reasonably would have received

if Defendants did not breach the Employment Agreement.

e.      Any other compensatory damages.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS
## AND CONFIDENTIAL INFORMATION

81.    Plaintiffs rely on the allegations in paragraphs 1 thru 80 as if more specifically restated

herein.

82.    RONALD C. WIAND has misappropriated the trade secrets and confidential information

of SOFT-LIGHT, INC. as set forth herein.

83.    Under MCL 445.1904, an employer is entitled to recover damages caused by an employee's

misappropriation of trade secrets and by the unjust enrichment caused by the

misappropriation.

84.    Under MCL 445.1905, a Plaintiff is entitled to recover reasonable attorney fees from

Defendants where the Defendants willfully and maliciously misappropriated trade secrets and

confidential information.

85.    Upon information and belief, RONALD C. WIAND unlawfully, willfully and maliciously

misappropriated and/or converted confidential information and/or trade secrets belonging to

SOFT-LIGHT, INC. and its shareholders to Wanxin, China and/or elsewhere.

86.    Defendants have been unjustly enriched as a result of Mr. Wiand's misappropriation of

confidential information and trade secrets.

87.    Upon information and belief, RONALD C. WIAND willfully and maliciously used,

misappropriated, and/or disclosed the trade secrets and confidential information for his own

benefit and/or for the benefit of other persons, in violation of Michigan law.

88.    Upon information and belief, RONALD C. WIAND is willfully and maliciously using the trade secrets and confidential information.

89.    On June 29, 2006, the Board of Directors adopted a resolution requiring RONALD C. WIAND to fully account for his misappropriation of confidential information and to cease all such unlawful activity. (Exhibit H).

90.    Despite Plaintiffs' request, the Defendants have ignored Plaintiffs' demands and continue to use corporate trade secrets and confidential information, to the detriment of the corporation and its shareholders.

91.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer, damages as alleged in this Complaint.

## COUNT V
## CONVERSION

92.    Plaintiffs rely on the allegations in paragraphs 1 through 91 as if more specifically restated herein.

93.    RONALD C. WIAND intentionally and substantially interfered with and exercised dominion and control over the trade secrets and confidential information of SOFT-LIGHT, INC. and conveyed same to persons in Wanxin, China or elsewhere without justification.

94.    MCL 600.2919a provides that a Plaintiff may recover treble damages against a person who receives or aids in the concealment of any stolen, embezzled or converted property, stating, in pertinent part:

> A person damaged as a result of another person's
> buying, receiving, or aiding in the concealment of any

stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover **3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees.** This remedy shall be in addition to any other right or remedy the person may have at law or otherwise. [emphasis added]

95.  RONALD C. WIAND received or aided in the concealment of stolen, embezzled and/or converted trade secrets and confidential information belonging to SOFT-LIGHT, INC. and all its shareholders.

96.  RONALD C. WIAND knew that the trade secrets and confidential information were stolen, embezzled or converted at the time he alienated the trade secrets and confidential information to Wanxin, China or elsewhere.

97.  RONALD C. WIAND does not intend to return to SOFT-LIGHT, INC. and its shareholders the trade secrets and confidential information or the fruits of such conversion.

98.  Plaintiffs are irreparably harmed by Defendants' conversion since, upon information and belief, the confidential information and trade secrets at issue have already been communicated to persons in China or elsewhere, thereby damaging the competitive advantage of SOFT-LIGHT, INC.

99.  As a direct and proximate result of Defendants' unjustified and improper interference with, and improper exercise of dominion and control over the trade secrets and confidential information, Plaintiffs have suffered, and continue to suffer, compensatory damages totaling in excess of $75,000, plus interest, costs, and attorney fees, as alleged in this Complaint.

## COUNTY VI
## CONSPIRACY

100.  Plaintiffs rely on the allegations in paragraphs 1 thru 99 as if more specifically restated herein.

101.  At all relevant times, Defendants engaged in concerted activities and/or conspired to remove Plaintiffs from the Board of Directors and employment of SOFT-LIGHT, INC. and misappropriate corporate assets to China or otherwise outside of the United States, as described herein above, by express or implied agreement.

102.  As a direct and proximate result of Defendants' concerted activities, Plaintiffs have sustained and will continue to sustain severe injuries and damages as more specifically alleged herein.

103.  Due to the concert of action among the various Defendants, each is liable to Plaintiffs for these injuries and damages even if there was no direct relation to the activity conducted by that particular Defendant, and/or even if there was no direct use of trade secrets and/or confidential information by that particular Defendant.

104.  Further, Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of engaging in the activities described herein above.

105.  This conspiracy resulted in the illegal, unlawful, or tortious activities alleged in each count of this Complaint.

106.  As a result of the conspiracy and Defendants' illegal, unlawful, or tortious acts, Plaintiffs sustained all damages alleged in this Complaint.

107.  Defendants are each jointly and severally liable to Plaintiffs for all their damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that this Honorable Court shall enter an order granting the following relief in favor of Plaintiffs:

1.  Enter an Order against Defendants in favor of Plaintiffs granting the following relief:

    a.  A determination, as a matter of law, that the June 28 and/or 29, 2006 alleged shareholders' meeting was improperly noticed and called and, therefore, all actions arising out of said meeting are null and void, specifically the subsequent resolutions and actions taken against Plaintiffs. MCL 450.1489(1)( c).

    b.  That Defendant, RONALD C. WIAND, shall serve an accounting on all shareholders to account for all resources used during the period of time he was allegedly engaged in research and development at the Wanxin, China factory, or any location in China, through present.  This accounting shall include all contracts, research and development materials, processes, disclosure of patented processes, materials, financial resources, all outstanding invoices, or other disclosures that may in any way have allowed for an opportunity for a third party to interfere with the patents owned by SOFT-LIGHT, INC. or gain an economic or competitive advantage over SOFT-LIGHT, INC. in any market, including the China market.  MCL 450.1489(1)(d); MCL 600.3605(1)(a).

    c.  That all research and development activity on the "lens" may be performed only by Vision-Ease Lens laboratories/suppliers approved in writing by Vision-Ease Lens. MCL 450.1489(1)(d).

    d.  That RONALD C. WIAND shall be suspended from acting as an Officer or Director

of SOFT-LIGHT, INC. MCL 600.3605(1)( c) and/or (d) during this litigation.

e.　　Remove RONALD C. WIAND from the Board of Directors of SOFT-LIGHT, INC. permanently, pursuant to MCL 450.1514.

2.　　Enter an injunction restraining and enjoining Defendants, and their agents, servants, employees, representatives, attorneys, and those persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise from:

a.　　Passing any resolution of the Board of Directors and/or shareholders of SOFT-LIGHT, INC. which seeks to remove Plaintiffs from the Board of Directors during the pendency of this litigation. MCL 450.1489(1)( c).

b.　　Passing any resolution of the Board of Directors and/or Shareholders of SOFT-LIGHT, INC. from removing SAIDA BENHAJLA, Ph.D. as President and CEO. MCL 450.1489(1)( c).

c.　　Moving any of the business operations of SOFT-LIGHT, INC. outside of the United States of America during the pendency of this lawsuit. MCL 450.1489(1)(d) MCL 600.3605(1)(h).

d.　　Disclosing, sharing, or otherwise alienating any confidential corporate information, trade secrets, or property concerning and/or related to SOFT-LIGHT, INC.'s technologies contained in U.S. Patent Docket No.'s: P4222, P4223, P4224, P4225, P4226, P4227, P4184 (Exhibit K), and P4220PCT (PCT/US2006/006141 filed on March 21, 2006), 4225PCT (PCT/US2006/0044045 filed on February 7, 2006), and 4227PCT (PCT/US2006/004294 filed on February 7, 2006) (See Exhibit D) to any

person or entity other than Vision-Ease Lens pursuant to the terms and conditions of the Option Agreement (Exhibit D).  MCL  450.1489(1)(d); MCL 600.3605(1)(h)

c.     Continuing or otherwise engaging in any lens research and development, manufacturing and marketing activity, of any nature, in the Wanxin, China factory and all locations in China and/or any other foreign country not approved by Vision-Ease Lens (in writing) with respect to those processes and licenses addressed in the May 1, 2006 Option Agreement.  MCL 450.1489(1)(d).

3.     A judgment in favor of Plaintiffs and against Defendants, jointly and severally, for all damages to Plaintiffs stated in this Complaint, in excess of $75,000, including but not limited to: exemplary damages, actual compensatory damages, future compensatory damages, treble damages, and all other appropriate damages plus interest, costs and attorney fees, and grant such other relief as is just and equitable.

Respectfully submitted,

CHAPMAN AND ASSOCIATES, P.C.

Ronald W. Chapman (P37603)
Brian J. Richtarcik (P49390)
Attorneys for Plaintiffs
40950 Woodward, Suite 120
Bloomfield Hills, MI  48304
(248) 644-6326

Dated: July 15, 2006

Page 24 of 26

## VERIFICATION OF COMPLAINT

The undersigned, SAIDA BENHAJLA, Ph.D, shareholder of SOFT-LIGHT, INC., being first

duly sworn, deposes and says that she has read the foregoing Complaint and that the Statements of

Fact contained therein are true based upon her information, knowledge, and belief.

For  Plaintiffs

By: Saida Benhajla, Ph.D.
Shareholder

Subscribed and sworn to before me this
10th day of July, 2006.

Brian J. Richtarcik    , Notary Public
County of  ~~Oakland~~ Mccomb
Acting in the County of  Oakland
My commission expires: Jan. 23, 2009.

Page 25 of 26

## **EXHIBITS**

A.          Bylaws of Soft-Light, Inc.

B.          Employment Agreement

C.          Bailout Agreement

D.          Option Contract

E.          Letter by Ronald Wiand, June 2006.

F.          Alleged Notice of Special Shareholders Meeting, dated June 16, 2006.

G.          Letter by Saida Benhajla to Ronald Wiand, dated June 26, 2006.

H.          Notice of Special Meeting of Board of Directors by Saida Benhajla, June 2006.

I.          Resolution of Shareholders, dated June 28, 2006.

J.          Resolution of Board of Directors, dated June 29, 2006.

K.          Assignment (of patent rights from Ronald C. Wiand to SoftLight, Inc.) Dated March 30, 2005 and May 31, 2005.

L.          Consent Resolutions Of The Directors Of Soft-Light, Inc., dated June 29, 2006.



# BY-LAWS
## OF
## SOFT-LIGHT, INC.

### ARTICLE I - OFFICES

The office of the Corporation shall be located in the City, County and State designated in the Certificate of Incorporation. The Corporation may also maintain offices at such other places within or without the United States as the Board of Directors may, from time to time, determine.

### ARTICLE II - MEETING OF SHAREHOLDERS

#### Section 1 - Annual Meetings:

The annual meeting of the shareholders of the Corporation shall be held within five months after the close of the fiscal year of the Corporation, for the purpose of electing directors, and transaction of such other business as may properly come before the meeting.

#### Section 2 - Special Meetings:

Special meetings of the shareholders may be called at any time by the Board of Directors or by the President, and shall be called by the President or the Secretary at the written request of the holders of twenty-five (25%) percent of the shares then outstanding and entitled to vote thereat, or as otherwise required by law.

#### Section 3 - Place of Meeting:

All meetings of shareholders shall be held at the registered office of the Corporation, or at such other places within or without the State of Michigan as shall be designated in the notices or waivers of notice of such meeting, or as shall be agreed upon prior to such meeting.

#### Section 4 - Notice of Meetings:

(a)     Written notice of each meeting of shareholders, whether annual or special, stating the time when, place where, and the purposes for which it is to be held, shall be served either personally or by mail, not less than ten nor more than sixty days before the meeting, upon each shareholder of record entitled to vote at such meeting and to any other shareholder to whom the giving of notice may be required by law. Notice of a special meeting shall also state why the meeting is called, and shall indicate that it is being issued by, or at the direction of, the person or persons calling the meeting. If, at any meeting, action is proposed to be taken that would, if taken, entitle shareholders to receive payment for their shares pursuant to the Statute, the notice of such meeting shall include a statement of that purpose and to that effect. If mailed, such notice shall be directed to each such shareholder at his address, as it appears on the records of the shareholders of the Corporation, unless he shall have previously filed with the Secretary of the Corporation a written request that notice intended for him be mailed to some other address, in which case, it shall be mailed to the address designated in such request.

(Exhibit A)

(b)      Notice of any meeting need not be given to any person who may become a shareholder of record after the mailing of such notice and prior to the meeting, or to any shareholder who attends such meeting, in person or by proxy, or to any shareholder who, in person or by proxy, submits a signed waiver of notice either before or after such meeting. Notice of any adjourned meeting of shareholders need not be given, unless otherwise required by Statute.

(c)      Anything to the contrary contained in this Article II notwithstanding, any action required or permitted by the Michigan Business Corporation Act, Act 284 of Public Acts of 1972, or by these By-laws to be taken at an annual or special meeting of shareholders may be taken without a meeting, without prior notice and without a vote, provided that a consent thereto in writing, setting forth the action so taken, is signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take the action at a meeting at which all shares entitled to vote thereon were present and voted. Written notice of the taking of this corporate action without a meeting by less than unanimous written consent shall be given to shareholders who have not consented thereto in writing within five business days of the taking of such action. Such notice shall be deemed to have been given on the date of mailing, postage prepaid to the last known address of such shareholders.

Section 5 - Quorum:

(a)      Except as otherwise provided herein, or by Statute, or in the Certificate of Incorporation (such Certificate and any amendments thereof being hereinafter collectively referred to as the 'Certificate of Incorporation') at all meetings of shareholders of the Corporation, the presence at the commencement of such meetings in person or by proxy of shareholders holding of record a majority of the total number of shares of the Corporation then issued and outstanding and entitled to vote, shall be necessary and sufficient to constitute a quorum for the transaction of any business. The withdrawal of any shareholder after the commencement of a meeting shall have no effect on the existence of a quorum, after a quorum has been established at such meeting.

(b)      Despite the absence of a quorum at any annual or special meeting of the shareholders, the shareholders, by a majority of the votes cast by the holders of shares entitled to vote thereon, may adjourn the meeting. At any such adjourned meeting at which a quorum is present, any business may be transacted at the meeting as originally called if a quorum had been present.

Section 6 - Voting:

(a)      Except as otherwise provided by Statute or by the Certificate of Incorporation, any corporate action, other than the election of directors, to be taken by vote of the shareholders, shall be authorized by a majority of votes cast at a meeting of shareholders by the holders of shares entitled to vote thereon.

(b)      Except as otherwise provided by Statute or by the Certificate of Incorporation, at

-2-

each meeting of shareholders, each holder of record of stock of the Corporation entitled to vote thereat, shall be entitled to one vote for each share of stock registered in his name on the books of the Corporation, on the day next proceeding the day on which the notice is given.

(c)     Each shareholder entitled to vote or to express consent or dissent without a meeting, may do so by proxy; provided, however, that the instrument authorizing such proxy to act shall have been executed in writing by the shareholder himself, or by his attorney-in-fact thereupon duly authorized in writing.  No proxy shall be valid after the expiration of eleven (11) months from the date of its execution, unless the person executing it shall have specified therein the length of time it is to continue in force.  Such instrument shall be exhibited to the Secretary at the meeting and shall be filed with the records of the Corporation.

(d)     Any resolution in writing, signed by all of the shareholders entitled to vote thereon, shall be and constitute action by such shareholders to the effect therein expressed, with the same force and effect as if the same had been duly passed by unanimous vote at a duly called meeting of shareholders and such resolution so signed shall be inserted in the Minute Book of the Corporation under its proper date.

Section 7 - New Shareholders:

Every person becoming a shareholder in this Corporation shall be deemed to assent to these By-Laws, and shall designate to the Secretary the address to which he desires that the notice herein required to be given may be sent, and all notices mailed to such addresses, with postage prepaid, shall be considered as fully given at the date of mailing, and any person failing to so designate his address shall be deemed to have waived notice of such meeting.

## ARTICLE III - BOARD OF DIRECTORS

Section 1 - Number, Election and Term of Office:

(a)     The number of directors of the Corporation shall be at least one and no more than three unless and until otherwise determined by vote of a majority of the entire Board of Directors.  The number of directors shall not be less than three unless all of the outstanding shares are owned beneficially and of record by less than three shareholders, in which event the number of directors shall not be less than the number of shareholders permitted by Statute.

(b)     Except as may otherwise be provided herein or in the Certificate of Incorporation, the members of the board of Directors of the Corporation, who need not be shareholders, shall be elected by a majority of the votes cast at a meeting of shareholders, by the holders of shares present in person or by proxy, entitled to vote in the election.

(c)     Each director shall hold office until the annual meeting of the shareholders next succeeding his election, and until his successor is elected and qualified, or until his prior death, resignation or removal.

Section 2 - Duties and Powers:

-3-

The Board of Directors shall be responsible for the control and management of the affairs, property and interests of the Corporation, and may exercise all powers of the Corporation, except as are in the Certificate of Incorporation or by Statute expressly conferred upon or reserved to the shareholders.

### Section 3 - Annual and Regular Meetings - Notice:

(a)     A regular annual meeting of the Board of Directors shall be held immediately following the annual meeting of the shareholders, at the place of such annual meeting of shareholders.

(b)     The Board of Directors, from time to time, may provide by resolution for the holding of other regular meetings of the Board of Directors, and may fix the time and place thereof.

(c)     Notice of any regular meeting of the Board of Directors shall not be required to be given and, if given, need not specify the purpose of the meeting; provided, however, that in case the Board of Directors shall fix or change the time or place of any regular meeting, notice of such action shall be given to each director who shall not have been present at the meeting at which such action was taken within the time limit, and in the manner set forth in paragraph (b), Section 4 of this Article III, with respect to special meetings, unless such notice shall be waived in the manner set forth in paragraph (c) of such Section 4.

(d)     Anything to the contrary in this Section 3 notwithstanding, action required or permitted to be taken pursuant to authorization voted at an annual or regular meeting of the Board of Directors, may be taken without a meeting if, before or after the action, all members of the Board of Directors consent thereto in writing. Such written consents shall be filed with the minutes of the proceedings of the board. Such consent shall have the same effect as a vote of the Board of Directors for all purposes.

### Section 4 - Special Meetings - Notice:

(a)     Special meetings of the Board of Directors shall be held whenever called by the President or by one of the directors, at such time and place as may be specified in the respective notices or waivers of notice thereof.

(b)     Except as otherwise required by Statute, notice of special meetings shall be mailed directly to each director, addressed to him at his residence or usual place of business, at least two (2) days before the day on which the meeting is to be held, or shall be sent to him at such place by telegram, radio, or a cable, or shall be delivered to him personally or given to him orally, not later than the day before the day on which the meeting is to be held. A notice, or waiver of notice, except as required by Section 8 of this Article III, need not specify the purpose of the meeting.

(c)     Notice of any special meeting shall not be required to be given to any director who shall attend such meeting without protesting prior thereto or at its commencement, the lack

-4-

of notice to him or who submits a signed waiver of notice, whether before or after the meeting. Notice of any adjourned meeting shall not be required to be given.

(d)     Anything to the contrary in this Section 4 notwithstanding, action required or permitted to be taken pursuant to authorization voted at a special meeting of the Board of Directors, may be taken without a meeting if, before or after the action, all members of the Board of Directors consent thereto in writing. Such written consents shall be filed with the minutes of the proceedings of the board. Such consent shall have the same effect as a vote of the Board of Directors for all purposes.

Section 5 - Chairman:

At all meetings of the Board of Directors, the Chairman of the Board, if any and if present, shall preside. If there shall be no Chairman, or he shall be absent, a Chairman chosen by the directors shall preside.

Section 6 - Quorum and Adjournments:

(a)     At all meetings of the Board of Directors, the presence of a majority of the entire Board shall be necessary and sufficient to constitute a quorum for the transaction of business, except as otherwise provided by law, by the Certificate of Incorporation, or by these By-Laws.
(b)     A majority of the directors present at the time and place of any regular or special meeting, although less than a quorum, may adjourn the same from time to time without notice, until a quorum shall be present.

Section 7 - Manner of Acting:

(a)     At all meetings of the Board of Directors, each director present shall have one vote, irrespective of the number of shares of stock, if any, which he may hold.

(b)     Except as otherwise provided by Statute, by the Certificate of Incorporation, or by these By-Laws, the action of a majority of the directors present at any meetings at which a quorum is present shall be the act of the Board of Directors. Any action authorized, in writing, by all of the directors entitled to vote thereon and filed with the Minutes of the Corporation shall be the act of the Board of Directors with the same force and effect as if the same had been passed by unanimous vote at a duly called meeting of the Board.

Section 8 - Vacancies:

Any vacancy in the Board of Directors occurring by reason of an increase in the number of directors, or by reason of the death, resignation, disqualification removal (unless a vacancy created by the removal of a director by the shareholders shall be filled by the shareholders at the meeting at which the removal was effected) or inability to act of any director, or otherwise, shall be filled for the unexpired portion of the term by a majority vote of the remaining directors, though less than a quorum, at any regular meeting or special meeting of the Board of Directors called for that purpose.

### Section 9 - Resignation:

Any director may resign at any time by giving written notice to the Board of Directors, the President or the Secretary of the Corporation. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or such officer, and the acceptance of such resignation shall not be necessary to make it effective.

### Section 10 - Removal:

Any director may be removed with or without cause at any time by the affirmative vote of shareholders holding of record in the aggregate at least a majority of the outstanding shares of the Corporation at a special meeting of the shareholders called for that purpose, and may be removed for cause by action of the Board.

### Section 11 - Salary:

No stated salary shall be paid to directors, as such, for their services, but by resolution of the Board of Directors a fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of the Board; provided, however, that nothing herein contained shall be construed to preclude any director from serving the Corporation in any other capacity and receiving compensation therefore.

### Section 12 - Contracts:

(a)     No contract or other transaction between the Corporation and any other Corporation shall be impaired, affected or invalidated, nor shall any director be liable in any way by reason of the fact that any one or more of the directors of this Corporation is or are interested in, or is a director or officer, or are directors or officers of such other Corporation, provided that such facts are disclosed or made known to the Board of Directors.

(b)     Any director, personally and individually, may be a party to or may be interested in any contract or transaction of this Corporation, and no director shall be liable in any way by reason of such interest, provided that the fact of such interest be disclosed or made known to the Board of Directors, and provided that the Board of Directors shall authorize, approve or ratify such contract or transaction by the vote (not counting the vote of any such director) of a majority of a quorum, notwithstanding the presence of any such director at the meeting at which such action is taken. Such director or directors may be counted in determining the presence of a quorum at such meeting. This Section shall not be construed to impair, invalidate or in any way affect any contract or other transaction which would otherwise be valid under the law (common, statutory or otherwise) applicable thereto.

### Section 13 - Committees:

The Board of Directors, by resolution adopted by a majority of the entire Board, may from time to time designate from among its members an executive committee and such other

committees, and alternate members thereof, as they may deem desirable, each consisting of three or more members, with such powers and authority (to the extent permitted by law) as may be provided in such resolution. Each such committee shall serve at the pleasure of the Board.

## ARTICLE IV - OFFICERS

### Section 1 - Number, Qualification, Election and Term of Office:

(a)     The officers of the Corporation shall consist of a President, a Secretary, a Treasurer, and such other officers, including a Chairman of the Board of Directors, and one or more Vice Presidents, as the Board of Directors may from time to time deem advisable. Any officer other than the Chairman of the Board of Directors may be, but is not required to be, a director of the Corporation. Any two or more offices may be held by the same person.

(b)     The officers of the Corporation shall be elected by the board of Directors at the regular annual meeting of the board following the annual meeting of shareholders.

(c)     Each officer shall hold office until the annual meeting of the Board of Directors next succeeding his election, and until his successor shall have been elected and qualified, or until his death, resignation or removal.

### Section 2 - Resignation:

Any officer may resign at any time by giving written notice of such resignation to the Board of Directors, or to the President or the Secretary of the Corporation. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the board of Directors or by such officer, and the acceptance of such resignation shall not be necessary to make it effective.

### Section 3 - Removal:

Any officer may be removed, either with or without cause, and a successor elected by a majority vote of the Board of Directors at any time.

### Section 4 - Vacancies:

A vacancy in any office by reason of death, resignation, inability to act, disqualification, or any other cause, may at any time be filled for the unexpired portion of the term by a majority vote of the Board of Directors.

### Section 5 - Duties of Officers:

Officers of the Corporation shall, unless otherwise provided by the Board of Directors, each have such powers and duties as generally pertain to their respective offices as well as such powers and duties as may be set forth in these By-Laws, or as may from time to time be

specifically conferred or imposed by the Board of Directors.  The President shall be the chief executive officer of the Corporation.

### Section 6 - Sureties and Bonds:

In case the Board of Directors shall so require, any officer, employee or agent of the corporation shall execute to the Corporation a bond in such sum, and with such surety or sureties as the Board of Directors may direct, conditioned upon the faithful performance of his duties to the Corporation, including responsibility for negligence and for the accounting for all property, funds or securities of the Corporation which may come into his hands.

### Section 7 - Shares of Other Corporations:

Whenever the Corporation is the holder of shares of any other Corporation, any right or power of the Corporation as such shareholder (including the attendance, acting and voting at shareholders' meetings and execution of waivers, consents, proxies or other instruments) may be exercised on behalf of the Corporation by the President, any Vice President, or such other person as the Board of Directors may authorize.

## ARTICLE V - SHARES OF STOCK

### Section 1 - Certificate of Stock:

(a)     The certificates representing shares of the Corporation shall be in such form as shall be adopted by the Board of Directors, and shall be numbered and registered in the order issued.  They shall bear the holder's name and the number of shares, and shall be signed by (i) the Chairman of the Board, the President or a Vice President, and (ii) the Secretary or Treasurer, or any Assistant Secretary or Assistant Treasurer, and shall bear the corporate seal; if any is adopted by the Board of Directors.

(b)     No certificate representing shares shall be issued until the full amount of consideration therefore has been paid, except as otherwise permitted by law.

(c)     To the extent permitted by law, the Board of Directors may authorize the issuance of certificates for fractions of a share which shall entitle the holder to exercise voting rights, receive dividends and participate in liquidating distributions, in proportion to the fractional holdings; or it may authorize the payment in cash of the fair value of fractions of a share as of the time when those entitled to receive such fractions are determined; or it may authorize the issuance, subject to such conditions as may be permitted by law, of script in registered or bearer form over the signature of an officer or agent of the Corporation, exchangeable as therein provided for full shares, but such script shall not entitle the holder to any rights of a shareholder, except as therein provided.

### Section 2 - Lost or Destroyed Certificates:

The holder of any certificate representing shares of the Corporation shall immediately

notify the Corporation of any loss or destruction of the certificate representing the same. The Corporation may issue a new certificate in the place of any certificate theretofore issued by it, alleged to have been lost or destroyed. On production of such evidence of loss or destruction as the Board of Directors in its discretion may require, the Board of Directors may in its discretion require the owner of the lost or destroyed certificate, or his legal representatives, to give the Corporation a bond in such sum as the Board may direct, and with such surety or sureties as may be satisfactory to the Board, to indemnify the Corporation against any claims, loss, liability or damage it may suffer on account of the issuance of the new certificate. A new certificate may be issued without requiring any such evidence or bond when, in the judgment of the Board of Directors, it is proper to do so.

Section 3 - Transfers of Shares:

(a)     Transfers of shares of the corporation shall be made on the share records of the Corporation only by the holder of record thereof, in person or by his duly authorized attorney, upon surrender for cancellation of the certificate or certificates representing such shares, with an assignment or power of transfer endorsed thereon or delivered therewith, duly executed, with such proof of the authenticity of the signature and of authority to transfer and of payment of transfer taxes as the Board of Directors may require.

(b)     The Corporation shall be entitled to treat the holder of record of any share or shares as the absolute owner thereof for all purposes and accordingly, shall not be bound to recognize any legal, equitable or other claim to, or interest in, such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise expressly provided by law.

Section 4 - Record Date:

In lieu of closing the share records of the Corporation, the Board of Directors may fix, in advance, a date not exceeding fifty (50) days, nor less than ten (10) days, as the record date for the determination of shareholders entitled to receive notice or to vote at, any meeting of shareholders, or to consent to any proposal without a meeting, or for the purpose of determining shareholders entitled to receive payment of any dividends, or allotment of any rights, or for the purpose of any other action. If no record date is fixed, the record date for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the day next preceding the day on which notice is given, or if no notice is given, the day on which the meeting is held; the record date for determining shareholders for any other purpose shall be at the close of business on the day on which the resolution of the directors relating thereto is adopted. When a determination of shareholders of record entitled to notice of or to vote at any meeting of shareholders has been made as provided for herein, such determination shall apply to any adjournment thereof, unless the directors fix a new record date for the adjourned meeting.

Section 5. Pre-emptive Rights.

The holders of common stock of the corporation shall have a preemptive right, granted on

-9-

uniform terms and conditions prescribed by the board of directors to provide a fair and reasonable opportunity to exercise the right to acquire proportional amounts of the corporation's unissued shares of common stock when the board decides to issue them. A shareholder may waive his preemptive right. A waiver evidenced by a writing is irrevocable even though it is not supported by consideration.

There shall be no preemptive rights with respect to the following:

(a). Shares issued as compensation to directors, officers, agents, or employees of the corporation and approved unanimously by the board of directors;

(b). Shares issued to satisfy conversion or option rights created to provide compensation to directors, officers, agents, or employees of the corporation and approved unanimously by the board of directors;;

(c). Shares of any class of capital stock of this corporation with preferential rights to distributions or assets unless the shares with preferential rights are convertible into or carry a right to subscribe for or acquire shares of common stock of the corporation.

Shares subject to preemptive rights that are not acquired by the common shareholders may be issued to any person for a period of one year after being offered to common shareholders at a consideration set by the board that is not lower than the consideration set for the exercise of preemptive rights. An offer at a lower consideration or after the expiration of one year is subject to the common shareholders' preemptive rights.

For purposes of this Section, "shares" includes a security convertible into or carrying a right to subscribe for or acquire shares of common stock."

## ARTICLE VI - DIVIDENDS

Subject to applicable law, dividends may be declared and paid out of any funds available therefore, as often, in such amounts, and at such time or times as the Board of Directors may determine.

## ARTICLE VII - FISCAL YEAR

The fiscal year of the Corporation shall be fixed by the Board of Directors from time to time, subject to applicable law.

## ARTICLE VIII - CORPORATE SEAL

The Corporate seal, if any, shall be in such form as shall be approved from time to time by the Board of Directors.

## ARTICLE IX - AMENDMENTS

-10-

## Section 1 - By Shareholders:

All By-Laws of the Corporation shall be subject to alteration or repeal, and new By-Laws may be made, by the affirmative vote of shareholders holding of record in the aggregate at least a majority of the outstanding shares entitled to vote in the election of directors at any annual or special meeting of shareholders, provided that the notice or waiver of notice of such meeting shall have summarized or set forth in full therein, the proposed amendment.

## Section 2 - By Directors:

The Board of Directors shall have power to make, adopt, alter, amend and repeal, from time to time, By-Laws of the Corporation; provided, however, that the shareholders entitled to vote with respect thereto as in this Article IX above provided may alter, amend or repeal By-Laws made by the Board of Directors, except that the Board of Directors shall have no power to change the quorum for meetings of shareholders or the Board of Directors, or to change any provisions of the By-Laws with respect to the removal of directors or the filling of vacancies in the Board resulting from the removal by the shareholders. If any By-Law regulating an impending election of directors is adopted, amended or repealed by the Board of Directors, there shall be set forth in the notice of the next meeting of shareholders for the election of directors, the By-laws so adopted, amended or repealed, together with a concise statement of the changes made.

## ARTICLE X - INDEMNITY

(a)     Any person made a party to any action, suit or proceeding, by reason of the fact the he, his testate or intestate representative is or was a director, officer or employee of the Corporation, or of any Corporation in which he served as such at the request of the Corporation, shall be indemnified by the Corporation against the reasonable expenses, including attorney's fees, actually and necessarily incurred by him in connection with the defense of such action, suit or proceedings, or in connection with any appeal therein, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding, or in connection with any appeal therein that such officer, director or employee is liable for negligence or misconduct in the performance of his duties.

(b)     The foregoing right of indemnification shall not be deemed exclusive of any other rights to which any officer or director or employee may be entitled apart from the provisions of this section.

(c)     The amount of indemnity to which any officer or any director may be entitled shall be fixed by the Board of Directors, except that in any case where there is no disinterested majority of the Board available, the amount shall be fixed by arbitration pursuant to the then existing rules of the American Arbitration Association.

The undersigned Incorporator certifies that he has adopted the foregoing By-laws as the

first By-Laws of the Corporation.

DATE: December 2, 2002


_____
Saida Benhajla

_____
Ron Wiand

_____
Ron Hofer

_____
Dennis Raffaelli



*Confidential*
*p1 of 3*
*Saida*

# Saida Benhajla

**Position:** President, CEO

**Responsibilities:** Providing the Vision and Leadership to implement all Corporate Strategies as directed by the Board of Directors. To assure that all division and departmental goals are met.

**Compensation:**
**(First 2 years)** $170,000 per year, plus 20% share of profits, if profits exceed $400,000 (EBITD). If profits are less than $400,000 then he will receive an amount equal to 20% of the profit as calculated by EBITD.

**Equity:** 20% of the authorized shares of Soft-light, Inc. Ms. Benhajla will have a seat on the Board of Directors.

Saida, can earn up to an additional 8% of equity by fulfilling on the following:

A. Third party acquisition of a Soft-Light, Inc for at least $20,000,000 in the first three years will earn Saida an additional 8% shares.

B. Soft-Light, IPO generating $5 Million in 2 years or $10 Million in 2-4 years or $15 Million within the fifth year will earn Saida an additional 8% of additional shares.

C. Signing of a major distribution contract with any prescription optical concern that contributes at least $5 million on an annualized basis for at least three years will earn Saida an additional 8% of additional shares.

D. Annualized sales in the first five years are at least $5Million earns 2% of additional shares
   Annualized sales are $5.1 Million to $10 Million in the first five years, earns up to a total of 4% of additional shares.
   Annualized sales are $10.1Million to $13 Million in the first five years, earns up to a total of 6% of additional shares.
   Annualized sales are $13.1Million to $20 Million in the first five years, earns up to a total of 8% of additional shares.

E. If Annualized sales are $30Million or above in the three years, She Saida earns a total of 10% additional shares including paragraph D.

If after 5 years, the above bonus shares in paragraphs D & E have not been earned, they shall remain as Treasury stock.

**(Exhibit B)**

p 2 of 2

gaida

**Termination:**    Soft-Light may terminate Saida's employment at any time with cause. Soft-Light shall only have cause to terminate her employment if she is convicted of unlawful misconduct involving fraud which adversely affects Soft-Light or if she is found to be guilty of gross negligence, subordination or incompetence or of consistently not performing her job description/duties in a way that materially adversely affects Soft-Light. Gross Negligence shall be defined as the intentional failure to perform a manifest duty in reckless disregard of the consequences affecting Soft-Light. Incompetence shall be defined as the lack of ability, legal qualification or fitness to discharge the duties that fall under her responsibility.

**Conditions:**    All employees and shareholders will sign a Buy/Sell agreement, a stock Subscription agreement (stock is $1000/ percent of stock), an employee Confidential agreement. A receipt for the each persons stock with be Issued along with a photocopy of the individual stock certificates Which will be held within the Corporate Minute book at the Corporate Attorney's offices.

**Agreed:**

**Soft-Light, Inc.**

_____ , Title CHAIRMAN  Date 1/1/03

**Saida Benhajla**

_____ , Date       1/1/03



**Mutual Conditions of Satisfaction for Bailout**     Dated _March 20, 2006_

1. Saida/Ron each get 5% additional of stock treasury stock. This stock as well as Chuck 4% which has not been issued, will be documented/approved by board resolution by 3/31/06. All Stock additional to be issued by April 15th, 06

2. Ron has full financial authority of company until we are on firm footing, Chuck or Dennis Raffaelli will decide this. After the company is deemed back on track, the financial authority will be split between CEO/CFO. We will document this by board resolution.

3. Saida will get 2 months at $3000.00 from $50,000 of Ron's loan (March/April 2006). In addition for May through August, Saida will get $5k/mo (total from the combination of investor/other loans/VE/JV payments. After August, depending on timing of financial payments from VE/JV/Other, Saida will get $7K to $10k/mo for balance of the year.     Saida will accrue the difference between her pay and $10K/mo starting January 2006 and up to $150k for 2006. This accrual will be reflected in additional Note due back to Saida, at 8.75%  )

4. All SoftLight Inc Shareholder loans will be paid pro-rata to their $ value %. Saida/Chuck will accrue agreed upon pay amounts in a new note by Dec, 30th 06.

5. $1,000 per month is used to pay back Ron's  $50,000 over 6mos(interest 8.75%)

6. Ron/Saida both pledge to communicate/resolve mutual issues equitably directly and to be responsible each 100% for their relationship.

7. Lin Na will resume handling Lens Quality Liaison for SoftLight Inc starting March 2006 (she will be paid the 1 month unpaid). Frame Quality Issues will be handled by someone from Xiamen area, with technical/frame expertise. This person will be paid 50/50% by Mario and us thru JV. To be hired by June 06.

8. If Chuck gets Kughn to loan us $20,000 per month for 12 months by May 15; Chuck gets 1% of stock from each of us  (2% total). We sign a non-conflict of interest for Chuck to make the loan through Money Finders.

9. Chuck will get $3k/mo for March/April 06, If Chuck secures additional loans, his pay is increased by $2K/mo and Saida gets $1k/mo additional or if Saida secures loans, the reverse is true on additional pay/mo. Ron and Chuck handle Kughn negotiations. Saida can advise and must approve, Saida has sole veto power.

10. Chuck can accrue starting Jan 06, up to $5000/mo until he is paid $8,000/mo max the timing of which to be approved by Both Ron/Saida.

11. Ron will not receive salary until Saida approves or September whichever is first. Both Saida and Ron will decide on bonus structure for all executives as company financials grow. (both votes required to approve).

12. Saida will handle the North/South American Frame business and will be compensated.   This compensation for handling Wal-Mart, Safilo etc. other accounts will be in the form of additional pay of at least $1k/mo and not more than a total of $15k/mo salary upon mutual agreement of Ron and Saida. First Review will be 9/8/06.

Excepted and Agreed:

_Saida Benhajla_                        _Ron Wiand_

Saida Benhajla                          Ron Wiand

(Exhibit C)



*May 1, 2006*

## OPTION AGREEMENT

This Option Agreement ("Agreement"), dated as of May 1, 2006 ("Effective Date"), is entered into by and between Insight Equity A.P.X., LP, doing business as Vision-Ease Lens, having its address at 7000 Sunwood Drive, N.W., Ramsey, Minnesota 55303 ("VE"), and SoftLight, Inc., having its address at 900 Wilshire Dr., Suite 202, Troy, Michigan 48084 ("SI") (collectively, "the Parties").

A.    SI owns certain Patent Rights (as defined below) relating to cast ophthalmic photochromic lenses.

B.    SI and VE agree that additional efforts are required in order to determine the viability of the technology disclosed in the Patent Rights.

C.    VE desires to obtain, and SI desires to grant, an option for VE to license the Patent Rights in return for VE's involvement in exploring the viability of the technology.

Therefore, for valuable sufficient consideration which is hereby acknowledged, the Parties agree as follows:

1.    **Definitions.**

1.1    "Patents Rights" means 4220PCT (PCT/US2006/006141 filed on March 21, 2006), 4225PCT (PCT/US2006/004045 filed on February 7, 2006) and 4227PCT (PCT/US2006/004294 filed on February 7, 2006) and any foreign equivalent patents, and all reissues, re-examinations, continuations, divisionals of or to such patents.

2.    **Co-Development.**

2.1    Scope of Work.  During the Term, the Parties shall each commit commercially reasonable resources to the development of a cast ophthalmic photochromic lens according to the technology disclosed in the Patent Rights.  The object of the development shall be to develop a cast ophthalmic photochromic lens and a process for making such lens in accordance with the technical milestones set forth in Exhibit A.

3.    **Consideration**

3.1    Payments by VE.  Commencing on the Effective Date and subject to the terms of Section 3.2, VE shall pay SI a total of Thirty Thousand Dollars ($30,000.00) per month for six months in accordance with the Term of the Agreement.  SI will invoice VE on the last day of the month and VE will make such payments shall be due within the first five business days after each month.

3.2    Right to Discontinue Payments.  If in VE's sole discretion the co-development under Section 2.1 has not resulted in a cast ophthalmic photochromic lens satisfying the milestones of Exhibit A before the fifth payment under Section 3.1 is otherwise due, VE shall

SAB  ⸂ cH


(Exhibit D)

have the right to discontinue any further payments under this Agreement. In the event of non-payment of the monthly fee, SI is released from restrictions and is free to license the technology to others.

4.   **Right of First Refusal.**

   4.1   Option. During the Term of the Agreement and for a period of Thirty (30) days following the Term of this Agreement and so long as VE has not exercised its right to discontinue payments under Section 3.2, VE shall have the option to license the Patent Rights from SI according to terms substantially as set forth in Exhibit B. In the event VE exercises the option granted herein, then Fifty Percent (50%) of all payments made by VE under Section 3.1 shall be applied as a pre-payment of future royalty obligations set forth in Exhibit B.

   4.2   Stand Still. So long as VE has not exercised its right to discontinue payments under Section 3.2, SI shall not grant any rights under the Patent Rights to any third parties for a period of Sixty (60) days following the Term of this Agreement.

   4.3   Right of First Refusal. In the event VE exercises its option to license the Patent Rights under Section 4.1, but the Parties do not, for any reason, execute a definitive license agreement pursuant to Section 4.1 within a period of Sixty (60) days following the Term of this Agreement, then SI shall be free to grant rights under the Patent Rights to a third party provided the terms for such a grant are not more favorable than the terms set forth in Exhibit B. Any intended grant to a third party on terms more favorable than the terms set forth in Exhibit B shall first be offered to VE.

5.   **Intellectual Property.**

   5.1   Ownership. Any invention conceived pursuant to the co-development under Section 2.1 shall be owned by the Party who conceived of the invention. Any invention jointly conceived by the Parties shall be jointly owned by the Parties, however, neither Party shall license, transfer or otherwise dispose of its rights in such jointly owned invention without the express written approval of the other party.

6.   **Confidentiality.**

   6.1   Definition. "Confidential Information" means any information which is disclosed in any tangible form and (a) is clearly labeled or marked as confidential, proprietary or its equivalent, (b) is disclosed orally or visually, is designated confidential, proprietary or its equivalent at the time of its disclosure and is reduced to writing and clearly marked or labeled as confidential, proprietary or its equivalent within thirty (30) days of disclosure, or (c) is of a nature that could reasonably be expected to be confidential at the time of disclosure; provided that "Confidential Information" does not include information that (i) was in the receiving party's possession or was known to it prior to its receipt from the disclosing party; (ii) is or becomes public knowledge without the fault of the receiving party; (iii) is or becomes rightfully available on an unrestricted basis to the receiving party from a source other than the disclosing party; (iv) becomes available on an unrestricted basis to a third party from the disclosing party or from someone acting under the disclosing party's control or (v) is independently developed.

SAB   Jal

6.2    Obligation.  No party hereto will disclose, directly or indirectly, or use for any purposes other than in connection with this Agreement, any Confidential Information received from any other party without the prior written consent of such other party, and will keep such Confidential Information in confidence using at least the same degree of care it uses to protect its own proprietary information, but in no event less than reasonable care.

7.    **Representation and Warranties.**

7.1    Representations and Warranties of SI.

(a)    Title.  SI represents and warrants that it is the sole owner of the Patents and has the right to license the Patents to VE pursuant to option granted to VE in this Agreement.

(b)    Authority.  SI represents and warrants that it has the necessary power and authority to enter into and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby by SI have been duly authorized by SI.  This Agreement constitutes the legal, valid and binding obligation of SI, enforceable in accordance with its terms, (except as such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or by general principles of equity).

7.2    Representation and Warranties of VE.

(a)    Authority.  VE represents and warrants that it has the necessary power and authority to enter into and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby by VE have been duly authorized by the VE.  This Agreement constitutes the legal, valid and binding obligation of VE, enforceable in accordance with its terms, (except as such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or by general principles of equity).

SAB   Del

3

8.    **Term and Termination.**

8.1    Term.   The term of this Agreement shall commence on the Effective Date and continue for Six (6) Months unless VE chooses to exercise its option to discontinue payments under Section 3.2, in which case the Term of this Agreement shall be Four (4) Months. Notwithstanding the foregoing, this Agreement may be earlier terminated pursuant to Sections 8.2 or 8.3.

8.2    Termination by VE.   VE may terminate this Agreement upon written notice to the SL in the event of a material breach by SI of this Agreement and wherein SI does not remedy such breach within thirty days of receiving such notice.

8.3    Termination by the SI.   SI may terminate this Agreement upon written notice to the VEL in the event of a material breach by the VE of this Agreement and wherein VE does not remedy such breach within thirty days of receiving such notice.

8.4    Rights and Obligations on Termination.   The obligations of all parties under the terms of Section 4, 5 and 6 will survive termination of this Agreement.

9.    **Miscellaneous.**

9.1    No Implied Waivers.   No failure or delay on the part of SI or VE in exercising any right, power, remedy or privilege under this Agreement or provided by statute or at law or in equity or otherwise, including, without limitation, the right or power to terminate this Agreement, will impair, prejudice or constitute a waiver of any such right, power, remedy or privilege or be construed as a waiver of any breach of this Agreement or as an acquiescence therein, nor will any single or partial exercise of any such right, power remedy or privilege preclude any other or further exercise thereof or the exercise of any other right, power, remedy or privilege.

9.2    Relationship of the Parties.   Nothing contained in this Agreement is intended or is to be construed to constitute SI and VE as partners or joint venturers.   Except as expressly provided herein, no party hereto will have any express or implied right or authority to assume or create any obligations on behalf of or in the name of any other party or to bind any other party to any contract agreement or undertaking with any third party.

9.3    Notices.   All notices, requests and other communications to SI or VE hereunder will be in writing, will refer specifically to this Agreement and will be personally delivered or sent by internationally recognized courier (such as Federal Express), cost pre-paid, or by registered or certified mail with return receipt requested, postage prepaid, in each case to the respective address specified in the first paragraph of this Agreement (or to such address as may be specified in writing to the other parties hereto)   Any notice or communication given in conformity with this Section 9.3 will be deemed to be effective upon signed receipt.

9.4    Successors and Assigns.   VE may assign or otherwise transfer its rights and obligations under this Agreement to any entity that assumes and agrees to perform (and has the

4

ability to perform) the obligations of the VE under this Agreement. SI may not assign or otherwise transfer any of its rights and obligations under this Agreement without the prior written consent of the VE. Any prohibited assignment will be null and void. All terms and conditions of this Agreement will be binding on and inure to the benefit of the successors and permitted assigns of the parties.

9.5   Amendments.  No amendment, modification, waiver, termination or discharge of any provision of this Agreement, nor consent by SI or VE to any departure therefrom, will in any event be effective unless the same is in writing specifically identifying this Agreement and the provision intended to be amended, modified, waived, terminated or discharged and signed by SI and VE, and each amendment, modification, waiver, termination or discharge will be effective only in the specific instance and for the specific purpose for which given. No provision of this Agreement may be varied, contradicted or explained by any other agreement, course of dealing or performance or any other matter not set forth in an agreement in writing and signed by SI and VE.

9.6   Governing Law.  This Agreement will be governed by and construed in accordance with the laws of the State of Minnesota, USA, as applied to contracts made and performed entirely within the State of Minnesota, without reference to the principles of conflicts of laws, except that the laws of the United States will apply to questions regarding the validity, infringement or enforceability of U.S. patents rights relating to the subject matter of this Agreement.

9.7   Severability.  If any provision hereof should be held invalid, illegal or enforceable in any respect in any jurisdiction, then, to the fullest extent permitted by law, (a) all other provisions hereof will remain in full force and effect in such jurisdiction and will be liberally construed in order to carry out the intentions of the parties hereto as nearly as may be possible and (b) such invalidity, illegality or unenforceability will not affect the validity, legality or enforceability of such provision in any other jurisdiction. To the extent permitted by applicable law, SI and VE hereby waive any provision of law that would render any provision hereof prohibited or unenforceable in any respect.

9.8   Entire Agreement.  This Agreement, together with any agreements or other documents expressly referenced herein or therein, constitutes, on and as of the Effective Date, the entire agreement of SI and VE with respect to the subject matter hereof, and all prior or contemporaneous understandings or agreements, whether written or oral, between SI and VE with respect to such subject matter are hereby superseded in their entirety.

